IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN GARY COPLEY, | ) | CASE NO. 1:12-CV-1758 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | REPORT & RECOMMENDATION |
| | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to local rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff Steven Copley's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court recommends that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## I. PROCEDURAL HISTORY

On February 14, 2008, Plaintiff Steven Copley ("Plaintiff" or "Copley") protectively applied for Supplemental Security Income benefits.  (Tr. 137-40).  Copley initially alleged he became disabled on October 1, 2006, due to suffering from post traumatic stress disorder and a fractured and dislodged hip. (Tr. 154, 166).  Plaintiff's application was denied initially and upon reconsideration.  (Tr. 66-68, 71-77).  On February 25, 2009, Plaintiff filed a written request for a hearing before an administrative law judge ("ALJ").  (Tr. 78-80).

On August 9, 2010, Administrative Law Judge John Sullivan convened a hearing via video to hear Copley's case. (Tr. 34-62). The ALJ presided over the hearing from Houston, Texas, and Plaintiff appeared with counsel in Cleveland, Ohio. (Tr. 15, 35). A vocational expert, Thomas Keen, also appeared and testified at the proceeding. (Tr. 52-60).

On November 17, 2010, the ALJ issued his decision applying the five-step sequential analysis[1] to determine whether Plaintiff was disabled. (Tr. 15-27). Based on his review, the ALJ held Copley had not been under a disability since his alleged onset date. (*Id*.). Following the issuance of this ruling, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 10). However, the council denied Plaintiff's request, thereby making the ALJ's ruling the

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity – i.e., working for profit – she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

2

final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. PERSONAL BACKGROUND INFORMATION

Copley was born on April 26, 1970, and was 40 years old on the date of his hearing before the ALJ. (Tr. 40). Accordingly, Plaintiff was considered as a "younger person" for Social Security purposes. *See* 20 C.F.R. § 416.963(c). Plaintiff attended college and earned his degree in social science. (Tr. 40). He has past experience working as a plumber/maintenance man for a greenhouse. (Tr. 40, 55). In July and August of 2008, Plaintiff reported working as a telephonic "secret shopper" – a quality control/compliance position. (Tr. 559). He also delivered newspapers between August 2008 and August 2009. (Tr. 534, 558).

## III. MEDICAL EVIDENCE[2]

In June 2005, prior to Plaintiff's onset date, he suffered a work-related injury to his knee, elbow, arm and wrist. (Tr. 245). X-rays of Copley's lumbosacral spine also showed mild degenerative changes. (Tr. 238). Plaintiff suffered another work-related injury in August 2006. (Tr. 297). After the injury, Copley complained of paresthesias and hemiparesis in his legs. (Tr. 311). An MRI of his cervical spine revealed a large disc herniation at C5-6 causing severe canal stenosis. (*Id.*).

On March 8, 2007, Plaintiff presented to Dr. Mario Sertich complaining of neck pain and weakness and numbness in his arms and legs. (Tr. 371). Dr. Sertich confirmed Plaintiff's ruptured disc at C5-6 with advanced myelopathy. (Tr. 372). He recommended Plaintiff undergo

---

[2] The following is a summary of the medical evidence relevant to the undersigned's decision. It is not intended to fully reflect all of the evidence the undersigned took into consideration in reaching its decision. Nor does it reference the medical evidence reflecting Plaintiff's mental impairments as Plaintiff's appeal was not based upon these impairments.

3

cervical diskectomy and fusion. (*Id*.). Plaintiff underwent the procedure on March 26, 2007. (Tr. 373). Nevertheless, Plaintiff eventually reported experiencing pain again. (Tr. 391, 395).

In February 2008, Plaintiff sustained a fall on the steps at his home. (Tr. 404). Afterwards, he complained of neck pain. (*Id*.). Upon examination by physicians, Plaintiff was diagnosed with a fracture of the C1 arch in his cervical spine, a herniated disc in his lumbar spine and radiculopathy. (Tr. 394). Treatment documents note that Copley had a very abnormal gait, walked with a cane, and had no strength in his lower extremities, particularly the left side. (Tr. 393). However, the record also shows that Plaintiff had good muscle bulk and tone in his legs. (*Id*.). During a follow-up visit later in the month, Plaintiff reported severe pain. (Tr. 391). His gait was "very bad" and he was unable to perform straight leg raises. (*Id*.). He was believed to have a herniated disc in his lumbar spine. (*Id*.). An MRI performed in March 2008 showed narrowing in the central canal from C4-5 through C6-7. (Tr. 389). The MRI also revealed narrowing of the nerve root foramina bilaterally from C5 through C7, and indicated compromise of the cervical cord in the lower cervical spine. (*Id*.). However, treatment records mention that since the area had been fused, it was not currently believed to be pressing on the spinal cord. (Tr. 387).

On May 7, 2008, Plaintiff presented to Dr. Medhi Saghafi for a consultative examination. (Tr. 461-66). Plaintiff's chief complaint to Dr. Saghafi was pain in his neck and back which radiated down to his left leg. (Tr. 461). The doctor diagnosed Copley with "[s]tatus post anterior discectomy and fusion of C5-C6 remote" and "[r]esidual low back strain". (Tr. 462). Based on his examination, Dr. Saghafi opined Plaintiff was able to sit, stand and walk for 6 to 8 hours each workday. (*Id*). The doctor did not believe Copley required a cane to walk. (*Id*.). Dr. Saghafi also held Plaintiff was able to lift 30 to 40 pounds on a frequent basis. (*Id*.).

In February 2009, Plaintiff was seen by Dr. Daniel Zanotti for treatment of his left elbow. (Tr. 522). Copley complained of numbness and tenderness in his elbow. (*Id.*). X-rays showed significant spurring, but Dr. Zanotti concluded Plaintiff would heal in time. (*Id.*).

In November 2009, Plaintiff went to the emergency room complaining of neck and back pain. (Tr. 591-92). X-rays showed mild degenerative disease at C6-7. (Tr. 593). Copley presented to the emergency room on December 30, 2009, again complaining of back and leg pain. (Tr. 600). Hospital records show Plaintiff exhibited tenderness in his lumbar spine. (Tr. 602).

On May 26, 2010, Plaintiff underwent an independent evaluation with Brian Bennett, a chiropractor. (Tr. 616-20). Copley informed Mr. Bennett that he experienced pain in his neck and back, as well as numbness in his arms and legs. (Tr. 616). During Mr. Bennett's examination of Plaintiff, he noted that a "foraminal compression test was positive on the right [side]" and that Plaintiff tested positive for straight leg raising from the seated position. (Tr. 619). He also diagnosed Plaintiff with degenerative joint and disc disease at C5-6, disc herniations at C5-6 and C6-7, central spinal canal stenosis between C4-5 and C6-7 and right upper extremity radiculopathy. (*Id.*). Finally, he opined that Plaintiff was totally disabled. (*Id.*).

Plaintiff's appeal is also based upon medical records not present in the record before the ALJ. On September 9, 2010, Plaintiff underwent an MRI of his left shoulder and lumbar spine. (*See* Exs. attached to Pl.'s Br.). The MRI of his shoulder revealed some impingement and tendinosis in the rotator cuff, but was otherwise normal. (*Id.*). The MRI of his spine showed "moderate diffuse developmental narrowing of the lumbar canal extending from L2-L4" and a small disc herniation at L3-L4. (*Id.*). However, it did not show compression or displacement of the nerve root. (*Id.*).

5

## IV. ALJ's DECISION

The ALJ made the following relevant findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since February 14, 2008, the application date.

2. The claimant has the following severe impairments: degenerative disc disease, degenerative joint disease, obesity, adjustment disorder with depressed mood, and post-traumatic stress disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work . . . except that the claimant is limited to occupations in which he can use a cane or crutch to ambulate. The claimant is limited to occasional postural maneuvers, such as balancing, stooping, kneeling, crouching, crawling, and climbing. In addition, the claimant is limited to occupations, which do not require exposure to dangerous machinery and unprotected heights. The claimant is also limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes. Furthermore, the claimant is restricted to occasional interaction with supervisors, coworkers and the general public.

5. The claimant is unable to perform any past relevant work.

. . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 14, 2008, the date the application was filed.

(Tr. 17-26) (internal citations omitted).

## V. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## VI. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001)*; Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed*. Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)*; Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence

7

in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VII. ANALYSIS

Plaintiff submits remand and/or reversal is proper on two grounds. First, Copley maintains the Court should reverse the ALJ's decision and grant benefits because his ailments meet listing level, and therefore, the ALJ's decision to the contrary was in error. In the alternative, Plaintiff contends there is new evidence, not in the record, which warrants remand for consideration by the ALJ.

### A. Listing Level

At the third step of the disability evaluation process, the ALJ must evaluate whether the claimant's impairments satisfy the requirements of any of the medical conditions enumerated in the Listing of Impairments within 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). *See* 20 C.F.R § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments recites a number of ailments which the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 416.925(c)(3).

A claimant will be deemed disabled if his impairment(s) meet or equal one of these listings. In order to "meet" a listing, the claimant must satisfy all of the listing's requirements. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009). However, if the claimant does not meet all of the listing's requirements, he may still be deemed disabled at this stage `if

8

his impairments "medically equal" the listing. 20 C.F.R. § 416.926(b)(3). To do so, the claimant must show that his impairments are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R § 416.926(a).

At step three of the analysis in the instant case, the ALJ specifically held that Copley's impairments did not meet or equal Listing 1.04. Additionally, although there is no listing for obesity, the ALJ also considered whether Copley's obesity, either singularly or in combination with his other impairments, met the criteria of any listing. The ALJ provided a thoughtful review of the issue and concluded in the negative. However, the ALJ did not provide any explanation of why Plaintiff's impairments did not meet or equal Listing 1.04.

> Listing 1.04 states in part:
>
> Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> . . .

20 C.F.R. Pt. 404, Sbpt P, App. 1, § 1.04. Plaintiff argues that his impairments satisfy these requirements. Plaintiff further contends that the ALJ failed to conduct a reasonable analysis of this issue, instead focusing on how Plaintiff's obesity impacted his disabled status.

Plaintiff's argument is well-taken. In order to facility meaningful judicial review, an ALJ must provide "a reasoned explanation of his findings and conclusions", including his ruling at step three of the sequential analysis. *Andrews v. Comm'r of Soc. Sec.*, No. 12-1311, 2013 WL

2200393, at *11 (E.D.Mich. May 20, 2013); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Without such explanation, the Court is unable to determine whether the ALJ's ruling is supported by substantial evidence. *Reynolds*, 424 F. App'x at 416.

In *Reynolds*, the Sixth Circuit addressed this issue and reversed the ALJ's decision. *Id*. at 415-16. In that case, the ALJ explained why Reynolds' mental impairments did not satisfy the relevant listing's criteria. But, other than one conclusory sentence indicating that Reynolds' back pack pain did not meet listing 1.00, the ALJ failed to explain why Reynolds' physical impairments did not meet or equal listing level. *Id*. Ultimately, the Sixth Circuit concluded that the ALJ "skipped an entire step of the necessary analysis" by omitting any discussion of this issue. *Id*. at 416. Furthermore, the court held that the error was not harmless because had the ALJ properly analyzed Reynolds' impairments at step three, the ALJ could have deemed her disabled in light of the evidence. *Id*.

The ruling in *Reynolds* controls the outcome of the case now before the Court. It is not possible for the undersigned to determine whether the ALJ's decision is supported by substantial evidence because while the ALJ detailed why Plaintiff's obesity did not meet listing level, the ALJ failed to supply any insight into why Plaintiff's impairments did not meet or equal Listing 1.04.

Unfortunately, this error was not harmless. Just as in *Reynolds*, Copley has come forward with evidence demonstrating that his ailments might meet or equal Listing 1.04(A). As an initial matter, the ALJ found Copley suffered from degenerative disc disease – one of the requisite ailments noted in the listing's heading. There is also evidence of nerve root compression: Copley's MRI results in March 2008 revealed compromise of the cervical cord. This evidence appears to satisfy the initial criteria noted in the listing. Plaintiff also supplied

10

evidence tending to demonstrate that he satisfies the criteria in subpart A of the listing. For example, there is evidence of neuro-anatomic distribution of pain: in February 2008, Dr. Sertich noted Plaintiff had radiculopathy. There is also evidence of sensory loss: Mr. Bennett found Copley had decreased sensation in the right C6 dermatome and at L5 and S1, and Dr. Saghafi also noted paresthesis in the right hand and forearm. And, with respect to straight leg raising tests: Dr. Saghafi indicated Copley had straight leg raises to 40 degrees and Mr. Bennett also noted Copley tested positive bilaterally. The record also contains numerous accounts of Plaintiff complaining of pain and using a cane to walk due to his unsteady gait.

The Commissioner disputes the importance and relevance of some of this evidence, arguing that it does not prove that Copley's impairments satisfy the criteria of Listing 1.04. However, the arguments presented by the Commissioner were not raised by the ALJ. If an ALJ's ruling is to stand, it must do so on the basis invoked by the ALJ. It is not proper for the undersigned to entertain *post hoc* rationalizations. *See May v. Astrue*, No. 4:10-cv-1533, 2011 WL 3490186, at *9 (N.D.Ohio June 1, 2011) (*citing Bable v. Astrue*, 2007 U.S. Dist. LEXIS 83635, *27-28 (N.D.Ohio Oct. 31, 2007)). Consequently, the undersigned is precluded from relying on these arguments.

The Court's ruling today should not be construed as finding that Copley's impairments meet or equal Listing 1.04. The undersigned recognizes that Plaintiff's brief did not identify evidence demonstrative of every element of Listing 1.04(A) – namely that he suffered limitation in the motion of the spine. But, the regulations direct a finding of disability at step three where the claimant's impairments meet or *equal* listing level. Thus, even if the evidence presented by Plaintiff did not establish that he met Listing 1.04(A), it might have been sufficient to demonstrate that Plaintiff's impairments medically equaled the listing. *See Andrews*, 2013 WL

2200393, at *14. However, because the ALJ's decision lacks an adequate explanation of his ruling at step three, the Court cannot determine whether there was a reasonable basis for the ALJ to discredit this evidence and find that Copley's ailments did not meet or equal listing level. As a consequence, remand is necessary. See Reynolds, 424 F. App'x at 415-16; May, 2011 WL 3490186, at *7-9.

### B. New Evidence

Finally, Copley contends that this case should be remanded because he has acquired new, material evidence which is likely to impact the ALJ's decision. Sentence six of 42 U.S.C. § 405(g) permits a court to remand a case back to the ALJ for consideration of new evidence under certain circumstances. The Sixth Circuit has interpreted this statute as creating three requirements to warrant remand for consideration of additional evidence. Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711-713 (6th Cir. 1988); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993). First, the claimant must submit evidence that is indeed new. Elliot v. Apfel, 28 F. App'x 420, 423 (6th Cir. 2002). Second, the evidence must be material. To satisfy this burden, the claimant must "demonstrate that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore, 865 F.2d at 711. Third, the claimant must show good cause exists for his failure to present the evidence at the hearing. Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 549 (6th Cir. 2002). When these three requirements are met, remand is proper for consideration of this evidence.

The undersigned is not convinced that the evidence in question – MRI test results – meets these criteria. Most notably, it is not clear that the evidence is material. The results show that there was impingement in Copley's left shoulder, diffuse narrowing in his lumbar spine and a small broad disc herniation at L3-L4.

The ALJ declined to find that Plaintiff's left shoulder problem constituted as a severe impairment, and Plaintiff did not explain why his MRI results require the ALJ to change this finding, or his ultimate ruling.  Likewise, the MRI results of Copley's spine appear to be duplicative of evidence already in the record, as there are already tests results and treatment notes documenting that Plaintiff suffered from disc herniation and narrowing in his spine at various locations.  Copley has not demonstrated why these records would cause the ALJ to conclude that he was disabled, when the ALJ was not so moved by the other evidence before him.

Nevertheless, because remand is proper on other grounds, Copley will now have the opportunity to present these records to the ALJ.

## VIII.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court recommends that the decision of the Commissioner be **REVERSED** and the case be **REMANDED** back to the administration.

s/ Kenneth S. McHargh<br>
Kenneth S. McHargh<br>
United States Magistrate Judge

Date: June 25, 2013.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *see also United States v. Walter*s, 638 F.2d 947 (6th Cir. 1981).

13